**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Margaret O. Abdelhadi, | : | Case No. 5:09CV2551 |
| Plaintiff, | : | |
| v. | : | |
| Commissioner of Social Security, | : | **MEMORANDUM DECISION AND ORDER** |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of Defendant's final determination denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U. S. C. §§ 416 (i) and 423 and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U. S. C. §§ 1381 *et seq*. Pending are the parties' briefs on the merits and Plaintiff's Reply Brief (Docket Nos. 15, 20 & 21). For the reasons that follow, the Magistrate affirms the Commissioner's decision.

I. **PROCEDURAL BACKGROUND.**

On June 20, 2007, Plaintiff filed applications for DIB and SSI alleging disability beginning on March 1, 2004 (Docket No 13, Exhibit 7, pp. 2-8 of 19). Plaintiff's requests for DIB and SSI benefits

were denied initially and upon reconsideration (Docket No. 13, Exhibit 6, pp. 2-12 of 19). Administrative Law Judge (ALJ) Stephen M Hanekamp held an administrative hearing on December 18, 2008 at which Plaintiff, represented by counsel, and Vocational Expert (VE) Thomas Neuberger appeared and testified (Docket No. 13, Exhibit 4, p. 2 of 39). The ALJ rendered an unfavorable decision on June 3, 2009 (Docket No. 13, Exhibit 2, pp. 9-21 of 23). The Appeals Council denied Plaintiff's request for review on October 14, 2009 (Docket No. 13, Exhibit 2, pp. 2-4 of 23). Plaintiff filed a timely action seeking judicial review of the Commissioner's final decision.

## II. FACTUAL BACKGROUND.

**A.   PLAINTIFF'S TESTIMONY.**

Plaintiff was 47 years of age and she had completed a one year business college program (Docket No. 13, Exhibit 4, p. 7 of 39). Plaintiff had been married for seven years. She had six biological children and four step children, two of whom lived at home (Docket No. 13, Exhibit 4, p. 12, of 39).

Plaintiff recalled that between 1990 and 1995, Reserves Network, a staffing service, placed her in a factory that manufactured books and sent out mass mailings. She sat while performing her duties. She lifted between five and ten pounds. Plaintiff recalled working at Marco, a factory that manufactured soap and detergent. There she stood all day to perform the work, occasionally lifting up to twenty pounds (Docket No. 13, Exhibit 4, p. 7-9 of 39).

Between 1995 and October 2002, Plaintiff was a clothes' sorter for a retail clothing outlet. She worked in small bins, sorting purses, ties, belts, socks, scarves, hats and gloves. She placed price tags on merchandise and "ran the cash register." Plaintiff did not lift any items that weighed more than fifty pounds (Docket No. 13, Exhibit 4, pp. 9 -10 of 39).

In 2002, Plaintiff assisted her husband co-manage a convenience store. Her duties included

managing the cash register, stocking the coolers and straightening the aisles. The heaviest items lifted were generally a couple of pounds (Docket No. 13, Exhibit 4, p. 11 of 39).

Plaintiff was a phlebotomist. Her duties required her to stand and walk most of the day. The heaviest item lifted included her case which weighed approximately two pounds (Docket No. 13, Exhibit 4, p. 10 of 39). She could no longer perform work as a phlebotomist as she had bilateral carpal tunnel syndrome (Docket No. 13, Exhibit 4, p. 22 of 39).

Plaintiff identified March 1, 2004, as the onset date of disability. The symptoms of depression became unmanageable although Plaintiff took her medication. The depression manifested itself by episodes of mania, which were exhibited through difficulty functioning daily, human isolation, feelings of loneliness, an inability to focus or stay on task, forgetfulness, feelings of invisibility and difficulty storing, retaining and recalling information (Docket No. 13, Exhibit 4, pp. 14, 16, 21, 23, 24, 25 of 39). At least twice a week Plaintiff did not get out of bed (Docket No. 13, Exhibit 4, p. 17 of 39). Plaintiff only left her home if she had an appointment. Occasionally Plaintiff attended services at the mosque on Friday (Docket No. 13, Exhibit 4, p. 19 of 39). Plaintiff lacked the ability to exercise sound judgment during her manic phase (Docket No. 13, Exhibit 4 pp. 25, 28 of 39). She had low self esteem and felt unimportant and ignored by her family. The symptoms were exacerbated by a husband who could not comprehend the severity of her illness and a belligerent stepson (Docket No. 13, Exhibit 4, p. 26 of 39). Plaintiff was prescribed medication designed to treat various types of seizures, depression and schizophrenia. She had been taking this combination of medication for approximately six years (Docket No. 13, Exhibit 4, pp. 16-17 of 39). The side effects of the medication included drowsiness (Docket No. 13, Exhibit 4, p. 35 of 39).

Plaintiff cared for homeless cats in her neighborhood (Docket No. 13, Exhibit 4, p. 16 of 39).

Occasionally, Plaintiff vacuumed and did the laundry (Docket No. 13, Exhibit 4, p. 18 of 39).    **B .**

**VE TESTIMONY.**

The VE characterized Plaintiff's past relevant work as follows:

- Sorter in mailing house sedentary work unskilled
- Hand packager light work unskilled
- Clothes sorter light/medium work unskilled,
- Phlebotomist light work semi-skilled
- Cashier light work unskilled
- Retail cashier/stocker light work semi-skilled.

(Docket No. 13, Exhibit 4, pp. 30-31 of 39).

The VE acknowledged that there were no physical impairments. The ALJ asked the VE to envision a hypothetical plaintiff under the age of 50, with a twelfth grade education and past relevant work as cited above, with no medically determinable physical impairments, and non-exertional limitations that included simple, routine tasks devoid of strict production quotas and no rigorous production pace and further restricted to superficial interaction with co-workers, supervisors and the general public. With this profile, the VE opined that the hypothetical plaintiff could perform Plaintiff's past relevant work except for the job of phlebotomist (Docket No. 13, Exhibit 4, pp. 32, 33 of 39).

### III. SUMMARY OF MEDICAL EVIDENCE.

On March 1, 2004, Dr. Catherine Flynn, Psy. D., diagnosed Plaintiff with a bipolar disorder I, most recent episode unspecified (Docket No. 13, Exhibit 11, p. 5 of 35). Plaintiff had mild restrictions in activities of daily living and mild difficulties in maintaining social functioning as a result of her mental impairment Docket No. 13, Exhibit 11, p. 12 of 35).

On July 29, 2005, Plaintiff underwent a biopsychosocial assessment at the Marion Citrus Mental Health Center in Ocala, Florida (Docket No. 13, Exhibit 10, pp. 15-22 of 28). She was diagnosed with bipolar disorder-depressed. Her consumption of medications--Depakote®, Effexor and Seroquel--was

4

monitored on September 8, October 7, December 8, December 23, 2005 and March 9, 2006 (Docket No. 13, Exhibit 10, pp. 4-7, 11 of 28). Prior to moving to St. Petersburg, Florida, on May 12, 2006, Plaintiff was anxious and depressed and having sleep difficulties. Plaintiff's mood was depressed but she did not suffer from delusions, was not suicidal or homicidal and she denied any auditory hallucinations (Docket No. 13, Exhibit 10, p. 3 of 28).

Plaintiff underwent a psychiatric evaluation on May 17, 2007. Her chief complaint was that she suffered persistent mood swings (Docket No. 13, Exhibit 10, p. 25 of 28). Dr. Manzoor E. Elahi, M. D., diagnosed Plaintiff with a bipolar I disorder and moderate symptoms or moderate difficulty in social, occupational, or school functioning (Docket No. 13, Exhibit 10, pp. 26-27 of 28).

On September 6, 2007, Plaintiff presented to the Portage Path Behavioral Health Center for medication to address the signs of depression that had manifested in the presence of family stressors, sleep and appetite disturbances (Docket No. 13, Exhibit 11, p. 27 of 35). Thereafter she sought therapeutic intervention on several occasions. On November 1, 2007, Plaintiff's mood was stable and she showed no signs of mania or depression (Docket No. 13, Exhibit 11, p. 23 of 35).

On January 3, 2008, Plaintiff was treated for an upper respiratory infection (Docket No. 13, Exhibit 12, p. 2 of 20). Plaintiff was seen as a walk-in at the Health Center on February 5, 2008. She reported increased anxiety, crying spells, depression and psychological stressors. She was prescribed a medication designed to relieve anxiety (Docket No. 13, Exhibit 12, p. 6 of 20). On March 25 and 28, 2008, Plaintiff's mood was improved as she was better at controlling her life stressors (Docket No. 12, Exhibit 11, p. 8 of 20). On May 20, 2008, Plaintiff was suffering from her fourth upper respiratory infection. However, she was tolerating her anti-anxiety medication well. She was not psychotic or suicidal (Docket No. 13, Exhibit 12, p. 12 of 20). The medications were continued on October 22, 2008

(Docket No. 13, Exhibit 12, p. 19 of 20).

Licensed social worker Julie Klein Vouko opined on April 24, 2008, that Plaintiff was unable to perform the following tasks on a regular, reliable and sustained schedule:

- Understand and remember detailed instructions,
- Carry out detailed instructions,
- Maintain attention and concentration for extended periods of time,
- Work in coordination with or proximity to others without being distracted by them,
- Complete a normal work week and workday without interruptions from psychological-based symptoms,
- Respond appropriately to changes in the work setting,
- Travel in unfamiliar places or use public transportation and
- Set realistic goals or make plans independently of others.

(Docket No. 13, Exhibit 11, pp. 34, 35 of 35).

Plaintiff was treated for chest pain on September 20, 2008 (Docket No. 13, Exhibit 13, pp. 10, 14 of 22). The results from the computed tomography (CT) scan of Plaintiff's chest showed no pulmonary arterial defect, no enlargement of the lymph nodes located in the mediastinum or hila and no pulmonary embolus, thoracic aortic aneurysm or dissection (Docket No. 13, Exhibit 14, p. 14 of 17).

### IV.  STANDARD OF DISABILITY.

DIB and SSI are available only for those who have a "disability." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007) (*citing* 42 U.S.C. § 423(a), (d); *See also* 20 C.F.R. § 416.920). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* (*citing* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); *See also* 20 C.F.R. § 416.905(a) (same definition used in the SSI context)).

The Commissioner's regulations governing the evaluation of disability for DIB and SSI are

identical for purposes of this case, and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively.  To assist clarity, the remainder of this Report and Recommendation refers only to the DIB regulations, except where otherwise necessary.

To determine disability under Sections 404.1520 and 416.920, a plaintiff must first demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (*citing Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990)).

Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  *Id.*  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.*

Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  *Id.*

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  *Id.*

For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.  *Id.* (*citing Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001)(internal citations omitted) (second alteration in original)).  If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates. *Id.* (*citing* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).

## V.  ALJ DETERMINATIONS

After consideration of the entire record, the ALJ made the following findings of facts:

1. Plaintiff met the insured status requirement of the Act through September 30, 2007.

2. Plaintiff had not engaged in substantial gainful activity since March 1, 2004.

3. Plaintiff had a severe mental impairment: bipolar disorder. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C. F. R Part 404, Subpart P, Appendix 1.

3. Plaintiff had no medically determinable impairment limiting her physical ability to perform basic work related activities except that she was limited to simple routine tasks that could be performed independently, with no strict quotas, no rigorous production pace and superficial interaction with co-workers, supervisors and the general public.

4. Plaintiff was capable of performing past relevant work as a sorter, packer, clothes sorter, cashier and retail cashier. This work did not require the performance of work related activities precluded by Plaintiff's residual functional capacity (RFC).

5. Plaintiff was not under a disability as defined in the Act from March 1, 2004 through June 3, 2009.

(Docket No. 13, Exhibit 2, pp. 14-21 of 23).

### VI. STANDARD OF REVIEW

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006). The district court must affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence. *McClanahan, supra*, 474 F.3d 830 at 833 (*citing Branham v. Gardner,* 383 F.2d 614, 626-627 (6th Cir. 1967)). In fact the Commissioner's findings as to any fact shall be conclusive if supported by substantial evidence. *Id.* (*citing* 42 U.S.C. § 405(g )). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (*citing Besaw v. Secretary of Health and Human*

*Services,* 966 F.2d 1028, 1030 (6th Cir. 1992)).

"The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Id.* (*citing Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted)). Therefore the reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994) (*citing Brainard v. Secretary of Health and Human Services*, 889 F. 2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984)).

## VII. ANALYSIS

**1.    TREATING SOURCE OPINIONS.**

Plaintiff contends that the ALJ erred by failing to articulate specific and legitimate reasons to reject the opinions of long term treating sources, Dr. Elahi, Ms. Vouko and Dr. Brar, and misread portions of the record by reporting that Plaintiff consistently had a stable mood while taking her medications. Plaintiff argues that he ALJ wrongfully attributed more weight to the treatment notes of Dr. Elahi and Ms. Vouko and disregarded their opinions based upon their clinical experience. Defendant contends that the ALJ reasonably evaluated the treating source evidence.

The ALJ "must" give treating source opinions controlling weight if such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009) (*citing Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004)(*quoting* 20 C.F.R. § 404.1527(d)(2)). On the other hand, a Social Security ruling explains that "[i]t is an error to give an opinion controlling weight simply because it is the opinion

9

of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." *Id.* (*citing* SOC. SEC. RUL. 96-2p, 1996 WL 374188, at *2 (July 2, 1996)).

If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Id.* (*citing Wilson,* 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2)).

The regulations require the ALJ to "always give good reasons in [the] notice of determination or decision for the weight" given to the claimant's treating source's opinion. *Id.* (*citing* 20 C.F.R. § 404.1527(d)(2)). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 406-407 (*citing* SOC. SEC. RUL. 96-2p, 1996 WL 374188, at *5). Because the reason-giving requirement exists to "ensur[e] that each denied claimant receives fair process," the Sixth Circuit Court of Appeals has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record." *Id.* (*citing Rogers v. Commissioner of Social Security*, 486 F.3d 234, 243 (6th Cir. 2007) (emphasis added)).

Here, the ALJ considered all of Plaintiff's symptoms and the extent that such symptoms could be accepted as consistent with objective medical evidence and other evidence based on the requirements

10

of 20 C. F. R. §§ 404.1529, 416.929, the opinions evidence based on 20 C. F. R. §§ 404.1527, 416.927 and SSR 96-5p. In applying these standards, the ALJ determined that the opinions of Dr. Brar and Dr. Elahi were attributed great weight to the extent that their treatment notes were substantiated by their medical findings (Docket No. 13, Exhibit 2, p. 18 of 23). Dr. Brar's treatment notes indicated that Plaintiff was tolerating her medications well and that she was able to maintain a stable mood. Dr. Elahi concurred that while Plaintiff was taking her medication, she exhibited signs of stability. Ms. Vovko counseled Plaintiff, charting her symptoms and the effects of her medication. She, too, noted that Plaintiff was stable when she took her medication consistently. The ALJ was entitled to discredit the conclusions that Plaintiff was incapable of employment considering that these opinions expressed in the letter of July 2007 or the other opinion evidence lacked the supportability of the treatment records and these opinions were inconsistent with the record as a whole.

The ALJ applied the correct legal standard and made findings of fact that are supported by substantial evidence. The Magistrate defers to those findings.

**2.   CREDIBILITY FINDING.**

The ALJ found that Plaintiff was not fully credible because, contrary to her assertions, the medical record showed that she responded well to medications and therapy. Plaintiff argues that the ALJ discredited her because she did laundry, drove a car, went to the doctor's office, attended services at the mosque, visited family, fed the cats and saw her adult children weekly. These activities were performed during short periods of time and are not indicative of whether she can work eight hours per day for five days weekly. Plaintiff contends that, consequently, the ALJ's credibility opinion is not based on substantial evidence. Defendant contends that substantial evidence supports the ALJ"s credibility analysis.

11

It is well established that the ALJ's findings as to a claimant's credibility are entitled to deference because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints. *Gaffney v. Bowen,* 825 F.2d 98, 101 (6th Cir. 1987) (*citing Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 538 (6th Cir. 1981); *Cruse v. Commissioner of Social Security,* 502 F. 3d 532, 542 (6th Cir. 2007)).  When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements.  TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, SSR 96-7P, 1996 WL 374186, *3 (July 2, 1996).

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, Title 20 C. F. R §§ 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

- The individual's daily activities;
- The location, duration, frequency, and intensity of the individual's pain or other symptoms;
- Factors that precipitate and aggravate the symptoms;
- The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
- Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
- Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
- Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*

Once the adjudicator has determined the extent to which the individual's symptoms limit the

individual's ability to do basic work activities by making a finding on the credibility of the individual's statements, the impact of the symptoms on the individual's ability to function must be considered along with the objective medical and other evidence, first in determining whether the individual's impairment or combination of impairments is "severe" at step two of the sequential evaluation process for determining disability and, as necessary, at each subsequent step of the process. *Id.* (*See* SSR 96-3P, "TITLES II AND XVI: CONSIDERING ALLEGATIONS OF PAIN AND OTHER SYMPTOMS IN DETERMINING WHETHER A MEDICALLY DETERMINABLE IMPAIRMENT IS SEVERE," and SSR 96-8P, "TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS.")

The activities of daily living are merely one component of the credibility analysis. In addition to considerations of maintaining her personal hygiene and appearance, the ALJ considered that Plaintiff was able to cook, do laundry, drive a car and vacuum. She regularly attended counseling sessions with a licensed social worker (Docket No. 13, Exhibit 2, pp. 15 of 23). The ALJ considered that there was no physical impairment that manifested pain (Docket No. 13, Exhibit 2, p. 16 of 23). The ALJ considered Plaintiff's symptoms and the medications that were effective in treating the symptoms. The ALJ completed a lengthy analysis of Plaintiff's medications, their dosages and effectiveness (Docket No. 13, Exhibit 2, pp. 17, 18 of 23). The ALJ concluded the analysis by comparing the symptoms on the individual's ability to function with the objective medical and other evidence. To the extent that Plaintiff's statements concerning intensity, persistence and limiting effects of her symptoms were inconsistent with this analysis, the ALJ found Plaintiff's testimony incredible.

The ALJ applied the correct legal standard, making detailed findings of fact and conclusions of law which explained the factors considered in assessing credibility. The Magistrate finds that since the ALJ's credibility decision was supported by substantial evidence, it cannot be set aside under 42 U. S.

C. § 405(g).

**3.     ACTIVITIES OF DAILY LIVING.**

Plaintiff suggests that the performance of her daily activities is irrelevant to the disability process because they are performed for a short period of time and bear no weight on whether she can work eight hours daily for five days weekly. The regulations provide that, generally, the ALJ may consider the household and social activities in evaluating symptoms. *Blacha v. Secretary of Health and Human Services*, 927 F. 2d 228, 231 (6th Cir. 1990). In this case, the ALJ found that Plaintiff's household and social activities were relevant to evaluating the intensity and severity of her symptoms. Such analysis did lend itself to the assessment of Plaintiff's credibility, not her RFC or ability to sustain substantial gainful employment.

Plaintiff relies on *Damron v. Secretary of Health and Human Services*, 778 F. 2d 279 (6th Cir. 1985), *Nettles v. Schweiker*, 714 F. 2d 833, 837 (8th Cir. 1983) and *Cohen v. Secretary of Health and Human Services*, 964 F. 2d 524 (6th Cir. 1992), to convince the Court that her ability to engage in household and social activities does not preclude an award of benefits. The Magistrate finds none of these cases persuasive that the performance of household and social activities is irrelevant to the disability process.

In *Damron*, the Sixth Circuit Court of Appeals determined that there was a conflict between plaintiff's testimony and the report of her attending physician as to the limitations on her activities; therefore, substantial evidence supported the ALJ's refusal to accept plaintiff's testimony about the limitations on daily activities. 778 F. 2d at 281.

In *Nettles*, the plaintiff established that the existence of a serious injury to his ankle and the medical reports in evidence failed to contradict his allegation of severe pain. 714. F. 2d at 837. This

14

painful degenerative condition which required substantial medication and the use of a cane clearly limited Nettles' activities.  *Id.*  Nettles was unable to engage in hobbies or household chores he had routinely performed.  *Id.*  The court remanded the case for consideration of the regulations in assessing the relevancy of Nettles' activities of daily living on his symptoms.  *Id.*

In *Cohen*, the performance of activities was relevant to the disability process.  The plaintiff, suffering from Epstein Barr, danced during periods of recovery and attended law school part-time.  During periods of exacerbation, plaintiff was confined to the bed up to eighteen hours daily.  *Id.* at 530.  This evidence was considered relevant to the assessment of RFC and the ALJ"s credibility determinations.  *Id*.

The regulations provide that the ALJ may consider the household and social activities in evaluating symptoms.  *Blacha v. Secretary of Health and Human Services*, 927 F. 2d 228, 231 (6th Cir. 1990).  In this case, the ALJ found that Plaintiff's household and social activities were relevant to evaluating the intensity and severity of her symptoms.  The ALJ did not err in considering the household and social activities.

Clearly, the performance of daily activities has a role in assessing the symptoms and credibility.  In this case, the ALJ accurately considered Plaintiff's performance of daily activities in assessing the severity of symptoms and ultimately in assessing credibility. Since the ALJ complied with agency guidelines, the Magistrate affirms the Commissioner's conclusions resulting from the consideration of daily activities.

4. **SEQUENTIAL EVALUATION**

Plaintiff reminds the Court that both of her treating physicians provided mental RFC evaluations that indicated she could not be counted on consistently in the workplace. The VE explained that such unreliability would preclude competitive employment. Consequently, the ALJ failed to sustain the burden of proof at Step Five of the sequential evaluation. Defendant claims that Plaintiff's Step Five arguments are unavailing as the ALJ found Plaintiff not disabled at Step Four of the sequential analysis.

Here, the ALJ determined at Step Four of the sequential evaluation that Plaintiff was not disabled since she could return to her past relevant work. The ALJ was not obligated to rely on the absence of evidence that Plaintiff would be unreliable to indicate that she is unable to perform her past relevant work at Step Four of the sequential analysis.

## VIII. CONCLUSION

For the foregoing reasons, the Magistrate affirms the Commissioner's decision and dismisses the complaint.

IT IS SO ORDERED.

/s/Vernelis K. Armstrong
United States Magistrate Judge


Date:   March 10, 2011